UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CR-80182-RLR-ROSENBERG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVID SHTEINBERG

    Defendant.

_____/

**PSR OBJECTIONS, SENTENCING MEMORANDUM AND REQUEST FOR ALTERNATIVE SENTENCE ON BEHALF OF DAVID SHTEINBERG**

DAVID SHTEINBERG, by and through the undersigned counsel, and pursuant to Rule 32 (f) of the Federal Rules of Criminal Procedure, Rule 88.8 of the Local Rules for the Southern District of Florida, and the due process clause of the Fifth Amendment to the United States Constitution, respectfully files his Objection to the PSR and Sentencing Memorandum and Request for an Alternative Sentence. The defendant moves this court for the imposition of a reasonable sentence not greater than necessary to meet the sentencing concerns expressed by Congress in 18 U.S.C. § 3553 of the United States Code. The defendant and counsel or his designated representatives have reviewed the Presentence Investigation (hereafter PSI).

## I. BACKGROUND INFORMATION

1. On _____, David Shteinberg was born in Israel. Mr. Shteinberg's parents got divorced when he was two years old. Mr. Shteinberg was raised by his grandmother and aunt.

2. Mr. Shteinberg was seven years old when the Six Day War took place in 1967 and was 13 years old when the Yom Kippur War took place in 1973.

3. At 14 years of age, Mr. Shteinberg moved to Canada. Mr. Shteinberg lived with his aunt and her husband.

4. When Mr. Shteinberg was 16 years old, he decided to live on his own. Over the course of the next few years, Mr. Shteinberg attended school during the day and worked as a waiter at night.

5. At the age of 21, Mr. Shteinberg returned to Israel by choice and voluntarily enlisted in the military. Mr. Shteinberg enlisted in the military with hopes of making his grandmother proud of him.

6. Mr. Shteinberg served in the Israeli military during the Lebanon War of 1982 and completed his service with honors in 1985. Sadly, Mr. Shteinberg's grandmother passed away while he was serving in the Israeli military.

7. Around a year later, Mr. Shteinberg moved back to Canada. Mr. Shteinberg found employment and became a district sales manager for El Al Israeli airlines.

8. During his employment with El Al airlines, Mr. Shteinberg became friendly with an Israeli diplomat and moved to New York City.

9. On September 11, 2001, Mr. Shteinberg was on the Verrazano bridge when the World Trade Center was struck. Mr. Shteinberg assisted first responders by bringing them food and water. Additionally, Mr. Shteinberg provided transportation to anyone in need.

10. Around a year later, Mr. Shteinberg returned working for El Al airlines.

11. On the morning of the Jewish New Year, Rosh Hashanah, in 2005, Mr. Shteinberg decided to go to the office of his synagogue in West Boca Raton to check an urgent email.[1]

---

[1] Further informa on, including Mr. Shteinberg's tes mony at the shooter's trial, can be found at https://www.courtv.com/title/18-fl-v-benayer-david-steinberg/.

12. While in the office, Mr. Shteinberg suddenly heard gunshots coming from the synagogue. Mr. Shteinberg first thought a terrorist attack was taking place.

13. Immediately, Mr. Shteinberg ran toward the shooter as people were running for their lives and seeking safety.

14. Mr. Shteinberg spotted the shooter, jumped on him, and tackled him to the ground.

15. Mr. Shteinberg detained the shooter until the police arrived. Sadly, despite Mr. Shteinberg's heroic efforts, one adult died and one child suffered minor injuries.

16. Some years later, Mr. Shteinberg assisted Camila Mora with getting her life back in order. Ms.Mora was homeless and Mr. Shteinberg took her in like she was his daughter.

**EDUCATIONAL BACKGROUND**

17. Mr. Shteinberg advised he received a high school diploma from William Lyon Mackenzie Collegiate Institute in York, Ontario in 1978; an associate degree in business administration from Seneca Polytechnic in Toronto, Canada in 1980; and the equivalent of a bachelor's degree in hotel hospitality at Technion in Israel in 1986.

18. Mr.Shteinberg has specialized training and skills in hospitality and does not have any professional licenses. Mr. Shteinberg worked in the travel business and also became involved in the Real Estate field.

**SUBSTANCE ABUSE ISSUES**

19. Mr. Shteinberg has consumed alcohol and used marijuana and methamphetamine. Mr. Shteinberg began drinking alcohol in 1978 at the age of 18 and described himself as a social drinker consuming one to two beers once or twice a week.

20. Mr. Shteinberg began using marijuana in 1978 and described his initial use as occasional. In the 1990s, Mr. Shteinberg began using marijuana to cope with kidney pain. Mr. Shteinberg advised that he further used marijuana to sleep and relax and used marijuana at the time of his arrest. Mr. Shteinberg indicated that he intended to obtain a medical marijuana card in Florida but did not obtain one because he forgot to ask his doctor about it.

21. Mr. Shteinberg began using methamphetamine in the 1990s after he was introduced to the drug by a girlfriend. Mr. Shteinberg smoked the drug because he liked the confidence it gave him in social and intimate situations. Mr. Shteinberg estimated that he used methamphetamine usually with a female friend about twice a week until his arrest.

22. According to U.S. Probation Office records, Mr. Shteinberg submitted a drug test that tested positive for amphetamines and marijuana on November 20, 2023, and amphetamines on December 1, and December 4, 2023. According to a substance abuse evaluation from Compass Health Systems in Palm Beach County, Florida dated December 7, 2023, Mr. Shteinberg was assessed for amphetamine abuse; and cannabis abuse and was recommended to attend weekly substance abuse group sessions to avoid relapse and so that he could learn coping skills and work on a relapse prevention plan. According to his discharge summary, Mr. Shteinberg was unsuccessfully discharged from treatment on or about January 16, 2024, due to absconding.

23. Mr. Shteinberg advised that he would benefit from substance abuse treatment.Since Mr. Shteinberg is subject to removal proceedings, a special condition of substance abuse is not recommended. However, he may benefit from substance abuse treatment through the Bureau of Prisons.

## PHYSICAL ISSUES AND MEDICAL CONDITIONS

24. Mr. Shteinberg is missing his upper front teeth from a jet ski accident in approximately 2018. Additionally, Mr. Shteinberg suffered from back, chest, and shoulder injuries as a result of the above jet ski accident.

25. Mr. Shteinberg has suffered from ongoing kidney stones since the 1990s and high blood pressure since approximately 2014, for which he takes medication. Mr. Shteinberg was diagnosed with a hernia in 2022 at Delray Community Hospital in Palm Beach County, Florida but has not yet undergone treatment. Mr. Shteinberg advised that he suffered a heart attack in 2023 while in the Palm Beach County Jail and was treated at Wellington Regional Hospital in Palm Beach County, Florida.

26. According to medical records from his primary doctor, Dr. Jennifer Christy Bartczak, in Oakland Park, Florida, Mr. Shteinberg was treated for kidney stone pain and diarrhea and was assessed with calculus of the kidney in 2013. Records revealed his medical history included cellulitis in his groin, entamoeba histolytica and cysts, syphilis, vitamin D and B12 deficiency, and gastrointestinal issues.

27. Medical records from the Palm Beach County Jail confirmed that Mr. Shteinberg is being treated for hypertension and cardiovascular disease for which he has been prescribed lisinopril and hydrochlorothiazide. Mr. Shteinberg's past medical history includes the following: unspecified right bundle branch block, syncope and collapse, calculus of the kidney, essential hypertension, hernia (right groin), and chronic back pain.

28. On March 14, 2024, Mr. Shteinberg entered a guilty plea to the following charges:

    Count 1:    Conspiracy to possess with intent to distribute 500 grams or more of a mixture and substance containing methamphetamine, 21 U.S.C. §§ 846 and 841(a)(1),(b)(1)(A), a Class A felony

    Count 11:    Possession with intent to distribute 50 grams of more of a mixture and substance containing methamphetamine, 21 U.S.C. §841(a)(1),(b)(1)(B), a Class B felony

29. Mr. Shteinberg has additional pending charges in State court as stated in the PSR report.

30. According to the PSR, neither an aggravating nor mitigating role is warranted.

31. The current total offense level is 27 and Mr. Shteinberg falls under category 1 criminal history.

32. Mr. Shteinberg's current guideline imprisonment range is 70-87 months.

## II. OBJECTION TO THE PRESENTENCE INVESTIGATION REPORT

As to the statutory penalties, advisory guideline calculation, criminal history computation and sentencing options, Mr. Shteinberg acknowledges that the probation officer correctly applied the sentencing guidelines and calculated his criminal history in this case. Based on a total offense level of 27 and a criminal history category of I, the advisory guideline imprisonment range is 70 to 87 months, to which Mr. Shteinberg, a "Zero-Point Offender," does not object.

With regard to Offender Characteristics, Mr. Shteinberg seeks to clarify the following.

1. As to paragraph 114, the probation officer interviewed Mr. Shteinberg at the Palm Beach County Jail rather than the U.S. Probation Office.

2. As to paragraph 115, Mr. Shteinberg's mother's first name was Zipora, rather than Izipora.

3. As to paragraph 117, Mr. Shteinberg's paternal sister's name is Shelly, rather than Sherry.

4. As to paragraph 119, Mr. Shteinberg maintains that he was never romantically involved with Camila Mora, and he considers their relationship to be that of a father and daughter.

5. As to paragraph 124, Mr. Shteinberg notes the heart attack he suffered in 2023 occurred while he was in custody in the Palm Beach County Jail.

6. As to paragraph 126, Mr. Shteinberg assumes that the medical records noted in that paragraph came from the Palm Beach County Jail, rather than Palm Beach County.

7. As to paragraph 145, Mr. Shteinberg wishes to add that his extensive experience in hospitality and tourism included a term as a District Sales Manager for El Al Israeli Airlines when he lived in Canada.

8. Factors that may warrant departure/variance: Mr. Shteinberg objects to paragraph 169, which states the probation officer has not identified any factors that may warrant a departure and/or variance. Mr. Shteinberg has led a life of service for others, and his conduct in the instant offense is contrary to his conscience and the way he seeks to treat and serve others. As noted below in his motion for a downward departure and a variance, factors clearly exist.

### III. BASED ON MR. SHTEINBERG'S LACK OF CRIMINAL HISTORY, BACKGROUND, AND PERSONAL CIRCUMSTANCES DEFENDANT SHOULD BE SENTENCED TO A BELOW GUIDELINE RANGE SENTENCE.

Pursuant to *U.S. v. Booker*, 543 U.S. 220 (2005), the federal sentencing process has adopted a three step approach. (*See* Fed. R. Crim. P. (b)(1)(M) amended December 1, 2007). First, the Court is to resolve any disputed guideline issues and determine the advisory guideline range. *Id*. Second, the Court is to consider if there are any factors that may warrant a departure from the advisory guideline range. *Id.* "The application of the guidelines is not complete until the departures, if any, that are warranted are appropriately considered," *U.S. v. Jordi,* 418 F. 3d 1212, 1215 (11th Cir. 2005). Lastly, the Court is to consider all of the sentencing factors of 18 USC § 3553(a) and impose a sentence which is "reasonable" and not greater than necessary to achieve the sentencing objectives set forth in 18 USC § 3553(a).

### MR. SHTEINBERG IS A HERO AND HAS SAVED LIVES

On the morning of September 11, 2001, Mr. Shteinberg found himself on the Verrazano Bridge in New York during the attack on the World Trade Center. Following the attack, officials diverted him to Battery Park in Manhattan. Rather than idly stand by, Mr. Shteinberg selflessly used his own vehicle to shuttle emergency personnel between rescue sites and to acquire and transport food to rescue workers.

October 4, 2005, during Rosh Hashana services in Chabad Weltman Synagogue in Boca Raton, Florida, a gunman shot a worshipper. Mr. Shteinberg was in his office adjacent to the synagogue, and upon hearing gunfire, he raced to the synagogue and, without regard for his own life, moved three worshippers out of harm's way, most likely saving their lives. Rather than sheltering in place, as most are currently taught in active shooter scenarios, Mr. Shteinberg took elected to actively participate in the rescue of others.

**§5H1.1. Age/§5H1.4. Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addiction (Policy Statement)**

The policy statement of rule 5H1.1 of the U.S. Sentencing guidelines states as follows:

> Age (including youth) may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration.

*U.S.S.G* § 5H.1(policy statement); *See U.S. v. Allman*, 119 Fed.Appx. 751 (6th Cir. 2005) (Age supports downward departure only when a defendant is both elderly and infirm).

The policy statement of rule 5H1.4 of the U.S. Sentencing guidelines states as follows:

> Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.
>
> Drug or alcohol dependence or abuse ordinarily is not a reason for a downward departure. Substance abuse is highly correlated to an increased propensity to commit crime. Due to this increased risk, it is highly recommended that a defendant who is incarcerated also be sentenced to supervised release with a requirement that the defendant participate in an appropriate substance abuse program (see §5D1.3(d)(4)). If participation in a substance abuse program is required, the length of supervised release should take into account the length of time necessary for the probation office to judge the success of the program.

*U.S.S.G* § 5H.4(policy statement); *See U.S. v. Whitmore*, 35 Fed.Appx. 307 (9th Cir. 2002) (Two level downward departure imposed at sentencing for bank fraud and related charges, on basis that defendant was 67 years old at time of sentencing and suffered from a number of infirmities, was not abuse of discretion, even though court acknowledged that defendant's physical situation did not amount to an extraordinary situation meriting departure); *See also U.S. v. Contini*, 220 Fed.Appx. 596 (9th Cir. 2007) (Imposition of 48-month sentence for defendant's conviction by guilty plea to conspiracy to commit mail fraud and money laundering was reasonable; district court considered statutorily designated factors, departed downward from the advisory Guidelines range to avoid unwarranted sentencing disparities among defendant and coconspirators, and recommended to the

Bureau of Prisons that defendant serve his sentence at a medical facility, accounting for defendant's medical conditions).

## APPLICATION OF LAW AND ANALYSIS

The court should grant Mr. Shteinberg's request for a downward departure and/or downward variance. Here, like the cases cited above, a downward departure and/or downward variance is warranted. Mr. Shteinberg is 63 years old and recently suffered a heart attack while being detained at the Palm Beach County Jail. Mr. Shteinberg suffers from cardiovascular issues, kidney issues, digestive system issues, has a hernia, and is missing his upper front teeth and suffered chest, back, shoulder, injuries from a 2018 jet ski accident.

Additionally and as stated above, Mr. Shteinberg also suffers from substance abuse issues. Mr. Shteinberg would benefit from substance abuse treatment. Accordingly, Mr. Shteinberg respectfully requests that Court depart downward under §5H1.1 and §5H1.4 . In the event the court declines to grant a downward departure on this basis, Mr. Shteinberg respectfully requests the court to consider the above circumstances under 18 USC § 3553(a).

### §5H1.11.  Military, Civic, Charitable, or Public Service; Employment-Related Contributions; Record of Prior Good Works (Policy Statement)

The policy statement of rule 5H1.11 of the U.S. Sentencing guidelines states as follows:

> Military service may be relevant in determining whether a departure is warranted, if the military service, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. Civic, charitable, or public service; employment-related contributions; and similar prior good works are not ordinarily relevant in determining whether a departure is warranted.

*U.S.S.G* § 5H1.11(policy statement) *See U.S. v. Workman*, 80 F. 3d 688 (2nd Cir. 1988) (District court acted within its discretion in granting defendant two-level downward departure in offense level to take into account defendant's rehabilitation; upon finishing sentence for another offense, defendant left narcotics trafficking enterprise at issue to join army and honorably completed military service, and rehabilitation was not undertaken at the spur of impending prosecution for crimes at issue).

## APPLICATION OF LAW AND ANALYSIS

Pursuant to § 5H1.11, Mr. Shteinberg moves for a downward departure from the advisory guideline range. Here, like the case cited above, a downward departure and/or downward variance is warranted. In this case, Mr. Shteinberg emigrated from Israel at approximately age 15 and moved to Canada. After arriving in Canada, and ultimately gaining Canadian citizenship, Mr. Shteinberg no longer had a military obligation in Israel. However, in 1982, out of loyalty to his country of birth, he voluntarily enlisted in the Israeli military and served honorably for three years during a time when Israel was actively fighting in Lebanon.

While Mr. Shteinberg acknowledges that he benefitted from serving in the Israeli Defense Force (IDF) because he learned independence and responsibility, the IDF certainly benefitted from Mr. Shteinberg's voluntary service in a time of war. Accordingly, Mr. Shteinberg respectfully requests that Court depart downward under § 5H1.11. In the event the court declines to grant a downward departure on this basis, Mr. Shteinberg respectfully requests the court to consider his military service under 18 USC § 3553(a).

### §5H1.2.    Education and Vocational Skills

The policy statement of rule 5H1.2 of the U.S. Sentencing guidelines states as follows:

> Education and vocational skills are not ordinarily relevant in determining whether a departure is warranted, but the extent to which a defendant may have misused special training or education to facilitate criminal activity is an express guideline factor.  See §3B1.3 (Abuse of Position of Trust or Use of Special Skill).
>
> Education and vocational skills may be relevant in determining the conditions of probation or supervised release for rehabilitative purposes, for public protection by restricting activities that allow for the utilization of a certain skill, or in determining the appropriate type of community service.

*U.S.S.G* § 5H1.2(policy statement); See *U.S. v. Blumenthal*, 2003 WL 22888803 (S.D. N.Y.) (Downward departure from Sentencing Guidelines base-level of 27 to 24 was partially warranted due to defendant completing university degree).

## APPLICATION OF LAW AND ANALYSIS

The court should grant Mr. Shteinberg's request for a downward departure and/or downward variance. Here, like the case cited above, a downward departure and/or downward variance is warranted. Mr. Shteinberg received a high school diploma from William Lyon Mackenzie Collegiate Institute in York, Ontario in 1978; an associate degree in business administration from Seneca Polytechnic in Toronto, Canada in 1980; and the equivalent of a bachelor's degree in hotel hospitality at Technion in Israel in 1986. The defendant has specialized training and skills in hospitality.  Accordingly, Mr. Shteinberg respectfully requests that Court depart downward under § 5H1.2. In the event the court declines to grant a downward departure on this basis, Mr. Shteinberg respectfully requests the court to consider the above circumstances under 18 USC § 3553(a).

**§5H1.5.   Employment Record (Policy Statement)**

The policy statement of rule 5H1.5 of the U.S. Sentencing guidelines states as follows:

> Employment record is not ordinarily relevant in determining whether a departure is warranted. Employment record may be relevant in determining the conditions of probation or supervised release (e.g., the appropriate hours of home detention). Since the advent of *Booker*, the Court may consider almost any facet of an individual's background, including Employment History as a consideration for a downward variance.

*U.S.S.G* § 5H1.5(policy statement); *See U.S. v. Casiano*, 296 Fed. Appx. 175 (2d. Cir. 2008) (Sentence of 51 months imprisonment for possessing cocaine with intent to distribute was substantively reasonable, where the sentencing guidelines called for a sentencing range of 188 to 235 months imprisonment partially based on defendant's employment record); *U.S. v. Jones*, 158 F.3d 492 (10th Cir. 1992) (in departing downward three levels (6-12 months jail reduced to 3 years probation), the court considered "the defendant's long impressive work history…where good jobs are scarce); *U.S. v. One Star*, 9 F.3d 60 (8th Cir. 1993) (Downward departure from 33-41 months to five years of probation for being felon in possession of firearm was partially justified by mitigating circumstances of defendant's good employment record); *U.S. v. Big Crow, 898 F.2d 1326, 1331-32 (8th Cir. 1990)* (excellent employment record); *U.S. v. Caruso*, 814 F.

Supp. 382 (S.D. N.Y. 1993) (Downward departure from Sentencing Guidelines range, resulting in sentence of probation for three years and six months' home confinement rather than 12 to 18 months' imprisonment, partially based on defendant being an entrepreneur in a small operation occurring at his coffee shop and good employment record).

## APPLICATION OF LAW AND ANALYSIS

The court should grant Mr. Shteinberg's request for a downward departure and/or downward variance. Here, like the cases cited above, a downward departure and/or downward variance is warranted. From 2003 to 2015, the defendant was reportedly an assistant operations manager for Elite Tours and Travel in Boca Raton, Florida. He worked full-time performing airline consolidation services. Prior to 2003, the defendant garnered extensive experience working in hospitality and tourism, which he learned from his grandparents. Accordingly, Mr. Shteinberg respectfully requests that Court depart downward under § 5H1.5. In the event the court declines to grant a downward departure on this basis, Mr. Shteinberg respectfully requests the court to consider the above circumstances under 18 USC § 3553(a).

## MR. SHTEINBERG IS LIKELY TO BE DEPORTED BECAUSE OF THIS CASE

It is very likely Mr. Shteinberg will be deported as a result of this case. Such a sanction is very severe standing alone. Based on the strong likelihood Mr. Shteinberg will be deported, the Court is asked to take this into consideration along with all of the other factors discussed above and reduce Mr. Shteinberg's sentence below the applicable guideline range.

## THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITY

According to the United States Sentencing Commission[2] , in Fiscal Year 2023 in the Southern District of Florida, the Court sentenced 31 methamphetamine cases, who each, like Mr. Shteinberg, had a criminal history category of I. Of those 31 cases, 20 received a downward

---

[2] See https://ida.ussc.gov/analytics/saw.dll?Dashboard

variance that did not involve a government motion or concurrence. Clearly, a downward variance as to Mr. Shteinberg would not constitute an anomaly.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 17, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either by transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

THE BALAGUERA LAW FIRM, P.A.
500 AUSTRALIAN AVENUE
Suite 105
West Palm Beach, FL 33401
Telephone: (561) 832-3133
Cell:      (561) 414-8016
Fax:       (561) 932-1654

By:    /s/Brian Balaguera
       BRIAN BALAGUERA, ESQ.
       Fla Bar. No. 0025702